IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| VICTOR LYLES, | |
| Plaintiff, | |
| VS. | CIVIL ACTION FILE NO.  1:06-CV-56 (WLS) |
| Dr. DWAYNE AYERS, Dr. MARK FULCHER, and MIKE TURNER, | |
| Defendants. | |

**RECOMMENDATION**

This § 1983 claim brought by a State of Georgia prisoner is who is alleging deliberate indifference to a serious medical condition is controlled by the following oft quoted language. "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. . . . . Nor does a simple difference of medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted).  It is for that reason as will be shown more fully below that the undersigned RECOMMENDS that the defendants' Motion for Summary Judgment be granted.

At all times pertinent to the circumstances giving rise to this complaint plaintiff was assigned to Calhoun State Prison although on more than one occasion he was temporarily detained at Augusta State Medical Prison for treatment at the Medical College of Georgia. Defendants' motion is supported by their brief, approximately 162 pages of plaintiffs medical file, and the affidavits of defendants Ayers and Fulcher. (Docs. # 66 - 68).  Although he was given the required notice of the filing of the motion in which his opportunity to respond in

opposition was clearly explained plaintiff has not done so. Further, the notice mailed to plaintiff at his last provided address has not been returned by the postal authorities as undeliverable, thereby giving rise to the presumption of receipt. (Doc. # 70).

Defendant Dr. Ayers is the Medical Director at Calhoun State Prison and as a Family Practitioner he is responsible for the treatment of the day to day routine maladies suffered by the inmates at the institution. The Georgia Department of Corrections has made arrangements for the prison medical directors to obtain consultations with medical specialists in fields such as Orthopedics, Orthopedic Surgery, Neurology and Neurosurgery (Doc. # 68-6, Ayers Aff. ¶ 4).

Defendant Dr. Fulcher is an assistant professor in the Department of Orthopedic Surgery and Co-Director of the hand and Upper Extremity Service at the Medical College of Georgia in Augusta, Georgia. He also serves as a Specialized Consultant for the Georgia Department of Corrections in Orthopedics, Orthopedic Surgery and Sugery of the Hand. (Doc. # 68-2, Fulcher Aff. ¶¶ 2, 8).

Defendant Mike Turner is evidently the Director of the Georgia Department of Corrections Health Services Department. In his somewhat rambling, often repetitive twenty-six page (exclusive of attachments) complaint plaintiff seems to be suing this defendant on the principle of *respondeat superior*, simply because he is the head of the department within the Department of Corrections responsible for providing health care to the State of Georgia's inmate population and allegedly instituting a policy to deny inmates needed surgery as a cost reduction measure.

*Facts as Shown by Evidence*

A reading of the affidavits submitted by the defendants Ayers and Fulcher along with portions of plaintiff's medical records attached thereto leaves little doubt that plaintiff has

suffered nerve damage in the area of his right wrist which causes him pain, numbness and evidently loss of hand strength. There is likewise no doubt that plaintiff has received extensive medical treatment for this condition while in prison, including two surgical procedures. As earlier stated this case seems to be about plaintiff not getting exactly the medical treatment he wanted.

According to plaintiff he was housed at Calhoun State Prison from July 25, 2002, through July 28, 2005. (Doc. # 3, Complaint, p. 4, ¶ 7 of printed complaint form). The following quotes from the affidavits of defendants Ayers and Fulcher address the amount and type of medical care and treatment received by the plaintiff.

5.

On April 19, 2002 inmate Lyles underwent Electrodiagnostic studies (EMG/ NCV) on his right upper extremity in the Neurology Clinic at the Medical College of Georgia (MCG). Findings were "Right median nerve lesion Carpal Tunnel Syndrome Grade III (moderate-severe), probably at scar on wrist".[1]

6.

On May 6, 2003 I requested an orthopedic surgery consult for further evaluation of inmate Lyle's right wrist condition. In my request I noted that inmate Lyles was a 37 year old black male with a history of Carpal Tunnel Syndrome, a radiculopathy of the right wrist, severe scaring of the right wrist and a right median nerve lesion. The inmate complained of continuous pain and numbness to his right wrist and hand. The inmate had worn a right wrist brace for the

---

[1] According to plaintiff's complaint he did not arrive at Calhoun State Prison until July 25, 2002. Thus it is unclear whether plaintiff is mistaken as to his arrival date at Calhoun, defendant Ayers is mistaken as to the date the tests were administered, or both are right and the tests were ordered and occurred while plaintiff was at Hays State Prison.

3

past seventeen months.  Additionally the inmate exhibited a positive Tinel's sign.   He was being treated with Neurontin and Naprosyn.  <u>In his report the consultant noted the inmate reported falling from a tree and injuring his wrist on November 3, 2001 and that his wrist was lacerated at the age of eight.</u>  The consultant recommended a Right Carpal Tunnel Release and proximal exploration.  On June 17, 2003 I submitted a consultation request for the recommended surgery.  The procedure was scheduled for August 28, 2003.  (Emphasis added) (Doc. # 68-6, Ayers Aff., ¶¶ 5 - 6).

10.

On August 28, 2003 I performed a "Right Carpal Tunnel Release with partial median nerve release over proximal wrist crease, secondary to scarring" on inmate Lyles at Augusta State Medical Prison (ASMP) in Augusta, Georgia. The standard Carpal Tunnel Release incision was extended proximally onto the distal forearm to explore the median nerve beneath a healed laceration that according to Mr. Lyles occurred at the age of eight. During this procedure, on August 28, 2003, there was noted to be significant scarring of the median nerve in the distal forearm deep to this skin scar, six centimeter proximal to the proximal wrist crease, with evidence of a neuroma in continuity (i.e. scarring within the nerve as a result of a partial nerve laceration). I and other surgical personnel saw small wire sutures within the nerve at that operation which is consistent with a previous repair of this nerve. The scar surrounding the median nerve was released (called a neurolysis) in addition to a formal Carpal Tunnel Release.

11.

On September 4, 2003 inmate Lyles returned the ASMP clinic for his first follow up visit at which time he was evaluated and treated by Dr. Doug Kasow, an Orthopaedic surgery

4

resident, and given instructions to follow up as needed. (Doc.# 68-2, Fulcher Aff., ¶¶ 10 - 11).

8.

On September 10, 2003 I saw inmate Lyles upon his return to Calhoun State Prison. I noted that inmate Lyles was doing well.

9.

On October 27, 2003 I submitted a consultation request on behalf of inmate Lyles for a follow up evaluation to determine if further treatment was indicated. Inmate Lyles complained that his right wrist symptoms had not improved after his August 28, 2003 surgery. The inmate reported that he had gone back to work as a dormitory orderly. The consultant noted the inmate's prior median nerve injury and recommended occupational therapy for strengthening the right wrist twice a week for four weeks. (Doc. # 68-6, Ayers Aff., ¶¶ 8 -9).

12.

On December 4, 2003 inmate Lyles returned to the clinic at ASMP complaining of persistent symptoms and decreased strength in the right hand. I discussed with him that the remaining symptoms were a result of the median nerve injury that he had sustained to that forearm at age eight. I recommended formal occupational therapy with follow up appointments to see me as needed. (Doc. # 68-2, Fulcher Aff., ¶ 12).

10.

On December 8, 2003 I submitted a consultation request for a post surgical Electrodiagnostic study of the inmate's right wrist. The study was completed on December 23, 2003. The report reads "(1) Right carpal tunnel syndrome, grade II (moderate), (2) Incomplete exam. <u>The patient would not allow right median motor to be done. Therefore it appears median</u>

5

<u>nerve function is no worse than it was on the previous study on April 19, 2002, but this can not be fully assessed without the right median motor studies</u>". (Emphasis added).

11.

On December 29, 2003 I submitted a consultation request on behalf of inmate Lyles following the orthopedic surgeon's recommendation for occupational therapy twice a week for four weeks to strengthen inmate Lyle's right wrist.

12.

On January 26, 2004 I submitted a consultation request for additional occupational and physical therapy for a three week follow up of inmate Lyles to assess the functional capability of his right wrist.

13.

On June 8, 2004 I submitted a consultation request for inmate Lyles to follow up with physical therapy.  The consult was approved and the inmate followed up with physical therapy on July 14, 2004.

14.

On October 14, 2004 I requested a consultation request for follow up with neurology due to inmate Lyle's poor response to physical therapy and his negative / incomplete Electrodiagnostic study from December 8, 2003.  The neurology consultant recommend that inmate Lyles be referred back to an orthopedic surgeon.   Dr. Brooks recommended a follow up Electrodiagnostic study of the inmate's right wrist and follow up with Dr. Fulcher at ASMP.

15.

On December 8, 2004 I followed Dr. Brooks' recommendation and submitted a

consultation request for a follow up Electrodiagnostic study of the inmate Lyles' right wrist to be done locally.   The study was done on January 6, 2005 and showed severe median neuropathy Grade III right hand Carpal Tunnel Syndrome, but some improvement as compared to previous examination done in December 23, 2003.

16.

On January 10, 2005 I submitted a consultation request for inmate Lyles to follow up with Dr. Fulcher at ASMP as recommended by Dr. Brooks.  (Doc. 68-6, Ayers Aff., ¶¶ 10 - 16).

16.

On February 10, 2005 inmate Lyles was seen in the ASMP clinic by Dr. Robert Lewis, an Orthopaedic surgery resident. Based upon persistent complaints and the findings of the Electrodiagnostic study from January 6, 2005 he scheduled a repeat Right Carpal Tunnel Release surgery. Dr. Lewis ordered x-rays of the right wrist at that visit which demonstrated "multiple surgical sutures…" in the forearm. This confirmed the operative findings of the August 28, 2003 procedure performed by me.

17.

On June 16, 2005 inmate Lyles was brought to the ASMP operating room holding area in preparation for surgery. A history and examination was performed by Dr. Walton Curl, my partner, who was the Orthopaedic surgeon scheduled to perform the case on that day. <u>Following this evaluation Dr. Curl contacted me through the MCG paging system. Dr. Curl was of the opinion that surgery would be of no benefit and called to ask my opinion. Dr. Curl reviewed with me the events that had transpired since my last contact with Mr. Lyles on December 4, 2003. He also related the findings of his examination that day. I agreed with Dr. Curl that a repeat carpal</u>

tunnel release would not provide benefit for Mr. Lyles' symptoms. The surgery was cancelled and Mr. Lyles was scheduled to see me in the clinic for repeat evaluation. (Emphasis added).

18.

On July 14, 2005 I saw inmate Lyles at the ASMP clinic. He complained of persistent symptoms following the surgery performed on August 28, 2003. Examination revealed reproduction of pain in the median nerve distribution of the hand with percussion over the median nerve (called "positive Tinel's sign") at level of the scar in his distal forearm. This confirmed that his nerve symptoms were not at the carpal tunnel, which is at the wrist, but rather in the distal forearm at the location of his pre-existing nerve injury seen at the August 28, 2003 procedure. My diagnosis at that visit was "Complex Regional Pain Syndrome (CRPS) of Right Median nerve". I recommended Neurontin, a medication which can be helpful for nerve pain, and stated "Surgery not recommended."  This was recorded on the Consultation Request for review by Dr. Ayers.   (Emphasis added).

19.

On September 5, 2006 repeat electrodiagnostic studies were ordered by Dr. Young at Smith State Prison.

20.

On February 2, 2007 these repeat electrodiagnostic studies were performed by a physician at ASMP.  The results: "This electrophysiological study demonstrates a severe (Grade 3) right carpal tunnel syndrome."

21.

On February 7, 2007 Lane Cooper, PAC, at Smith State Prison requested an Orthopaedic

Consult for surgical evaluation of Right Carpal Tunnel Syndrome.

22.

On April 13, 2007 Dr. Young at Smith State Prison requested a follow-up Orthopaedic Consult.

23.

On April 25, 2007 the Orthopaedic Consultant states: "Problem NOT Recurrent Carpal Tunnel – has neuroma proximally. Carpal Tunnel Surgery will not help this". (Emphasis added)

24.

On April 26, 2007 Dr. Young at Smith State Prison requested a Neurology consult to evaluate "inmate with pain right shoulder down to wrist".

25.

On June 8, 2007 the inmate was seen by a Neurolgist who in turn recommended a Neurosurgery consult.

26.

On September 21, 2007 Dr. Gerald Kadis, a Neurosurgeon, recommended a "Right Median Nerve Decompression Procedure"

27.

On December 6, 2007 Dr. Gerald Kadis at the Archbold Medical Center in Thomasville, Georgia; performed a right median nerve decompression including neurolysis from forearm (10 centimeter proximal to wrist) into palm. In his operative note he reported "dense scar tissue where the nerve was obviously previously partially injured and had scarred into the tendinous sheath".  (Emphasis added)

28.

On February 1, 2008 at Neurosurgery follow-up, Physical Therapy and Occupational Therapy were recommended.

29.

<u>On February 12, 2008 inmate Lyles made a Witness Statement regarding his refusal of medical treatment, specifically the inmate refused to perform prescribed Physical Therapy Exercises.</u>  (Emphasis added).

30.

On February 18, 2008 a Medical Consultation was completed by Dr. Ayers at Autry State Prison for Mr. Lyles to have an ER visit to Archbold Hospital to evaluate and treat stab wounds.

31.

On February 18, 2008 the ER reports stab wound to palm of left hand and right forearm. Apparently he received acute care for these wounds. In the progress note from that ER visit the healthcare provider notes "patient's carpal tunnel symptoms of decreased sensation and increase pain in right wrist have returned to presurgery amount".

32.

<u>Inmate Lyles suffers from pain in the median nerve distribution of his right hand.  His pain is consistent with Complex Regional Pain Syndrome ("CRPS") generated by a partial laceration of the median nerve in his distal forearm sustained at eight years of age and confirmed as a "neuroma in continuity" of the median nerve which has been seen and recognized during operations by myself on August 28, 2003 and most recently by Dr. Gerald Kadis on December 6, 2007. His condition is not Carpal Tunnel Syndrome. This is instead a compression neuropathy of</u>

10

the median nerve at the level of the wrist, not the forearm, the location of his pre-existing scar. In fact, the first set of Electrodiagnostic studies completed on April 19, 2002 before any surgery suggested the nerve lesion to be involving the median nerve "probably at scar …" Many sets of Electrodiagnostic studies have been ordered on inmate Lyles. These studies aid the physician in making a clinical diagnosis and cannot always distinguish between a nerve injury and a compression syndrome. In this case, the repeatedly positive electrodiagnostic studies were identifying an abnormality of the median nerve which at surgery was discovered to be a pre-existing nerve injury rather than the compression neuropathy of this nerve, known as Carpal Tunnel Syndrome. Furthermore, Carpal Tunnel Syndrome is typically relieved or improved with Carpal Tunnel Release surgery and Mr. Lyles' symptoms have persisted despite the two surgeries that have been performed. During the August 28, 2003 surgery I performed a Neurolysis of the median nerve at the level of the injured nerve in an attempt to relieve any of the symptoms which might have been resulting from the scar surrounding the old nerve injury. Dr. Kadis performed a similar procedure from the inmate's right distal forearm into the palm of his right hand on December 6, 2007.   According to his medical records inmate Lyles remains symptomatic at this time despite surgical procedures performed by two different surgeons. His diagnosis remains Complex Regional Pain Syndrome of the right median nerve. The standard of care for Complex Regional Pain Syndrome is pharmacologic treatment. Inmate Lyles has been prescribed Neurontin, a well known medication for treating this condition.   (Emphasis added)

33.

My decision not to reoperate on his wrist in June of 2005 was based upon the premise that surgery will not fix his condition. I was indeed aware of his medical condition at that time

<u>and recommended pharmacologic, not surgical treatment as the reasonable standard of care. It is my medical opinion that inmate Lyles did not suffer any serious physical injury from not receiving repeat surgery on his right wrist in June of 2005.</u>   (Doc. # 68-2, Fulcher Aff., ¶¶ 19 - 33)(Emphasis added).

Although the above quoted testimony taken from the affidavits of defendants Ayers and Fulcher is quite lengthy it certainly speaks to the degree of medical care and treatment received by plaintiff in attempting to resolve the pain he experiences from an injury he sustained to his right median nerve when he was eight years old.

*Summary Judgment Standard*

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  <u>Welch v. Celotex Corp.</u>, 951 F.2d 1235 (11th Cir. 1992)(citing <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial.  <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-608 (11th Cir. 1991).

*Discussion*

Plaintiff, who is obviously not a physician, has diagnosed himself to be suffering from Right Carpal Tunnel Syndrome.  Although he underwent surgery for that condition in August of 2003, it was determined at that time by defendant Fulcher that he did not suffer from that condition.  His main complaint seems to be that the cancellation of the second scheduled surgery for Carpal Tunnel Syndrome is evidence of the defendants deliberate indifference towards his serious medical condition.  Miraculously plaintiff totally fails to mention the laceration to and subsequent repair of his right median nerve when he was eight years old, which has been medically determined to be the cause of his pain rather than Carpal Tunnel Syndrome.

Plaintiff has provided no evidence to show and has identified none in the record indicating that he has the condition of which he complains.  Although some of the tests performed did result in a diagnosis of Carpal Tunnel Syndrome as pointed out in the quoted passages of the affidavits.  As early as April 19, 2002, there was some indication that the real source of plaintiff's medical complaints stemmed from a prior wrist injury which left a scar. "Findings were " <u>Right median nerve lesion</u> Carpal Tunnel Syndrome Grade III (moderate-severe), <u>probably at scar on wrist.</u>"" (Doc. # 68-2, Fulcher Aff., ¶ 9)(Emphasis added).

When defendant Fulcher performed the Carpal Tunnel Release on August 28, 2003, he also performed a partial median nerve release because of the scarring he noted on the median nerve.  He also observed small wire sutures in the median nerve which is consistent with previous repair of the nerve. (Doc. # 68-2, Fulcher Aff., ¶ 10).  On December 6, 2007, Dr. Gerald Kadis, a neurosurgeon in Thomasville, Georgia performed a right median nerve decompression including neurolysis from forearm into palm.  He noted "dense scar tissue where the nerve was obviously previously partially injured and had scarred into the tendinous sheath."

13

(Doc. # 68-2, Fulcher Aff, ¶ 27).

It is very clear to the undersigned that defendants Ayers and Fulcher have not been deliberately indifferent to plaintiff's serious medical condition. It is also clear that there is a difference of opinion between those defendants and plaintiff as to the origin of his pain. This will not support a claim of cruel and unusual punishment Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). As stated at the outset of this writing it is the RECOMMENDATION of the undersigned that the defendants' motion for summary judgment be GRANTED as to defendants Ayers and Fulcher. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

Insofar as defendant Turner is concerned plaintiff appears to be stating that as head of the Department of Corrections Health Services Department he instituted a policy to deny plaintiff needed surgery in order to save money and evidently on principles of *respondeat superior*. Plaintiff has offered no evidence to create a genuine factual issues on these points. Plaintiff's positions are not well taken, in view of the fact that Dr. Gerald Kadis performed surgery on the plaintiff in December 2007, and was obviously paid by the State. Further, neither defendant Ayers or Fulcher have ever discussed plaintiff's medical condition with each other or with defendant Turner (Doc. # 68-6, Ayers Aff., ¶ 4, Doc. # 68-2 Fulcher Aff., ¶ 8). "It is axiomatic, in Sectionn 1983 actions that liability must be based on something more that a theory of *respondeat superior.*" Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

The evidence of record in this case is clear, the decision not to perform the second Carpal Tunnel Release on plaintiff on June 16, 2005, was not the result of some policy to save money

by denying him the surgery or because defendant Fulcher lacked the requisite expertise to perform the procedure, it was because two orthopedic surgeons determined that plaintiff did not need that procedure.  Plaintiff has brought nothing before the court to question this.  For this reason it is also the RECOMMENDATION of the undersigned that defendant Turner's motion for summary judgment be GRANTED as well.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

        **SO RECOMMENDED,** this 23rd  day of December 2008.

                      */s/ Richard L. Hodge*
                      RICHARD L. HODGE
                      UNITED STATES MAGISTRATE JUDGE